UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESUS GUADALUPE SALAZAR,<br><br>Defendant. | Case No. 18-cr-00251-WHO-1<br><br>**ORDER SETTING EVIDENTIARY HEARING RE PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 80 |

Petitioner Jesus Guadalupe Salazar asserts one claim for habeas relief under 28 U.S.C. § 2255, based on ineffective assistance of counsel because his defense counsel failed to file a notice of appeal despite his request that she do so. Dkt. No. 80 ("Amended Petition"), Dkt. No. 80-1 ("Salazar Decl."). The government opposes because Salazar's defense counsel's recollection and notes demonstrate that Salazar repeatedly told his defense counsel that he did not want to file a notice of appeal. Dkt. Nos. 88, 88-2 ("Defense Counsel Decl."). The evidence presented in the declarations is directly contradictory. Therefore, I will hold an evidentiary hearing — preferably by Zoom to reduce expense and burden on all parties involved — to resolve the sole credibility issue presented.

**BACKGROUND**

On June 12, 2018, an indictment was filed against Salazar charging him with violations of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) for conspiracy to distribute and to possess with intent to distribute methamphetamine and heroin. Dkt. No. 1. On June 6, 2019, Salazar pleaded guilty to those violations. Dkt. No. 31. No plea agreement was signed or filed. Petitioner recommended a sentence of 120 months in custody, Dkt. No. 42, and the government recommended a sentence of 240 months in custody. Dkt. No. 43. Probation's Pre-Sentence Report recommended a two-level increase to the base offense level because guns were found in Salazar's home when it was

searched. Dkt. No. 40. Salazar argued that a two-level enhancement was not appropriate because there was nothing in the record tying him to use of a firearm during the act of engaging in drug trafficking. Dkt. No. 42 at 8–9. The government argued that the two-level enhancement for possession of firearms in connection with the offense was justified. Dkt. No. 43 at 3–4.

Sentencing was held on September 26, 2019. I applied the two-level Guidelines enhancement and sentenced Salazar to 210 months of imprisonment as recommended by Probation. Dkt. Nos. 47, 40. At the conclusion of the sentencing hearing, defense counsel for Salazar commented:

> And we would also, as this is an open plea, object for any procedural or substantive reasons that the sentence is unlawful, and we would continue, of course, our objection to the application of the gun enhancement.

Dkt. No. 73 (Tr. 9/26/19) at 21:19–22.

Petitioner did not file a notice of appeal. On July 6, 2020, acting pro se, Salazar filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, objecting to the two-level firearms enhancement applied at sentencing and alleging his counsel had a "duty to proceed" and disregarded his specific instruction to file a notice of appeal to challenge the enhancement. Dkt. No. 70. Petitioner retained counsel and filed an Amended Petition on March 8, 2021. Amended Petition at 1. The sole claim for relief in the Amended Petition is ineffective assistance of counsel in violation of the Sixth Amendment based on defense counsel's failure to file a notice of appeal to challenge the enhancement.

In his declaration in support of the Amended Petition, Salazar declares that after sentencing he discussed the potential of an appeal with his attorney and while he does not recall the details of that discussion, he "knew from the arguments presented at the sentencing hearing was that I had good grounds to appeal the ruling by the judge denying my motion to exclude the 2 extra points . . . and possibly other good grounds." Declaration of Jesus G. Salazar, Dkt. No. 80-1. He declares that "after my attorney finished talking to me about the right to appeal – and knowing that a notice to appeal was the first step in the process – and that I still would have time after that to decide whether to pursue it or not – I told my attorney to do what she thought best and file the notice of appeal. If she had told me that she was not going to file the notice I would have filed it myself." *Id*.

The government sought and Salazar did not oppose an order waiving the attorney-client

privilege for the purpose of securing limited discovery from Salazar's former defense counsel. Dkt. Nos. 82, 84. That limited discovery was granted, Dkt. No. 85, and the government and Salazar jointly drafted questions for his former defense counsel. Defense counsel answered the parties' questions through a declaration supported by her notes. Dkt. Nos. 88-2, 88-3 ("Defense Counsel Decl.").

Salazar's defense counsel declares that — based on her review of the notes from the four conversations defense counsel or her staff had with Salazar, recordings of voicemail messages, and documentation from her file — there is no indication that Salazar requested that she file an appeal. Defense Counsel Decl. ¶ 6. That is consistent with her memory. *Id*. Counsel's notes reflect that on October 1, 2019, she discussed what an appeal was and the procedure for an appeal through an interpreter in person with Mr. Salazar at Santa Rita jail. *Id*. ¶ 9b. Her notes reflect that she specifically asked Salazar if he wanted to appeal, and Salazar stated that "he did not." *Id*.[1] They went on to discuss the unlikely chance of success on appeal, but confirmed they could "try to appeal." *Id*. She then, "asked again if he wanted to do an appeal. He again said that he did not want to. I informed him of the deadline of the appeal and let him know that he could change his mind about filing one in the near future." *Id.* Salazar then asked if his sentence could be increased if he appealed, and defense counsel said that the chances of that would be low. *Id*. Later that same day, Salazar called defense counsel's office and with the help of an interpreter they again discussed the appeal process, and that defense counsel did not believe an appeal would result in additional charges. *Id*. ¶ 9c. Defense counsel again asked whether Salazar wanted to appeal he again "stated he did not." *Id*. Defense counsel reminded Salazar of the deadline for filing an appeal "if he wanted to change his mind." *Id*.

On October 9, 2019, Salazar called defense counsel's office. *Id*. ¶ 9d. Defense counsel was out of the office, but a staff member sent defense counsel text messages while she was speaking on the phone with Salazar. *Id*. Salazar wanted to know whether the 14-day filing deadline for the notice of appeal included weekend days. Defense counsel informed the staff member "that was the case" and the staff member "conveyed that to Mr. Salazar." *Id*. Salazar did

---

[1] The notes also reflect that on September 27, 2019, Salazar spoke with defense counsel's legal assistant about matters unrelated to an appeal and did not request an appeal. *Id*. ¶ 9a.

not ask to file an appeal during the call. *Id.* On October 17, 2019, per Salazar's request, defense counsel mailed Salazar's wife a copy of his sentencing paperwork. *Id.* ¶ 9f. On November 13, 2019 (after the October 21, 2019 deadline for filing a notice of appeal), Salazar called defense counsel's office to discuss matters not relevant to the Petition and during that conversation Salazar "did not make a request about an appeal" nor did he inquire about the status of an appeal, or ask any questions about an appeal. *Id.* ¶ 9h. Defense counsel asserts that Mr. Salazar "did not ask me to file an appeal" and never "stated to me to 'do what [I] thought best and file he notice to appeal.'" *Id*. ¶ 10.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The statute authorizes the sentencing court to grant relief if it concludes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id.* If the court finds that relief is warranted, it must vacate and set aside the judgment, and then do one of four things: (1) discharge the prisoner, (2) resentence him, (3) grant a new trial, or (4) "correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86, (1984). A petitioner claiming ineffective assistance of counsel must show two things: (1) deficient performance; and (2) prejudice. *Id.* at 687–88. Deficient performance requires a showing that counsel's representation fell below an "objective standard of reasonableness," as measured by prevailing professional norms. *Strickland*, 466 U.S. at 687–88. A "lawyer who ignores specific instructions from a defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A defendant who explicitly tells his attorney not to appeal cannot later claim ineffective assistance of counsel when the attorney follows those

instructions. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Where a defendant has not explicitly conveyed his wishes regarding an appeal, it is not *per se* unreasonable not to appeal, and the *Strickland* factors must be considered. *Flores-Ortega*, 528 U.S. at 470. Where a defendant explicitly tells his attorney to file a notice of appeal and the attorney does not do so, defendant is prejudiced under *Strickland* because the defendant lost his chance to file the appeal. *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005).

A district court must grant an evidentiary hearing "to determine the validity of a petition brought under [section 2255] unless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (internal quotation marks omitted). An evidentiary hearing is required where the petitioner "allege[s] specific facts, which, if true, would entitle him to relief," and the record "cannot conclusively show that the petitioner is entitled to no relief." *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). "Evidentiary hearings are particularly appropriate when claims raise facts which occurred out of the courtroom and off the record." *United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000) (internal quotation marks omitted).

"Decisions to hold hearings and conduct discovery [] are committed to the court's discretion." *Watts v. U.S.*, 841 F.2d 275, 277 (9th Cir. 1988). Where the dispositive issue to be determined at an evidentiary hearing is "'one of credibility, resolution on the basis of affidavits can rarely be conclusive.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 82 n.25 (1977)). However, in a rare case, "an issue of credibility may be conclusively decided on the basis of documentary testimony and evidence in the record." *Id.* at 277–78 (evidentiary hearing not required where ground for habeas relief was not raised to court or counsel in post-trial motions or communications, and only raised over a year later in the habeas petition).

**DISCUSSION**

The only issue to be resolved to determine whether Salazar is entitled to habeas relief is whether he instructed his defense counsel to file a notice of appeal — as he directly declares — or whether he repeatedly told his defense counsel not to file a notice of appeal — as his defense counsel declares. If what Salazar contends occurred in fact occurred — that he expressly directed

5

his counsel to file a notice of appeal and she did not do so — he would be entitled to relief. *See, e.g., Sandoval-Lopez*, 409 F.3d at 1197–98 ("If, as Sandoval-Lopez claims, it is true that he explicitly told his lawyer to appeal his case and his lawyer refused, then we are required by *Flores-Ortega* to conclude that it was deficient performance not to appeal and that Sandoval-Lopez was prejudiced," requiring court to "vacate and reenter the judgment so that Sandoval-Lopez can file a timely notice of appeal").

The government argues that Salazar is not entitled to habeas relief or an evidentiary hearing to resolve the obvious credibility issue created by the declarations because defense counsel's declaration is detailed and supported by her notes, documents, and voicemails. Based on those records and her recollection, she unambiguously declares Salazar did not ask her to file a notice of appeal, despite having multiple discussions with Salazar about the potential of an appeal, what an appeal entailed, and the deadline for filing the notice of appeal. On the other hand, there is Salazar's assertion to the contrary; that at some unspecified time in some unspecified conversation he instructed defense counsel to file the notice of appeal. The government argues that Salazar's bald assertion, unsupported by details regarding the conversation, does not justify an evidentiary hearing. *See, e.g., Chang v. U.S.*, 250 F.3d 79, 86 (2d Cir. 2001) (affirming district court's decision to not hold an evidentiary hearing and rely, instead, on affidavits where petitioner's "proffer involved a generic claim—one that can be, and is often, made in any case in which the defendant fails to testify—based solely on his own highly self-serving and improbable assertions" and "[t]rial counsel's detailed description of events was eminently credible"); *see also Howard*, 381 F.3d at 879 ("When a § 2255 petitioner's claim of incompetence due to the ingestion of drugs is conclusory or inherently incredible, a district court has the discretion to dismiss the petition without a hearing. When the allegations move beyond bald, conclusory or incredible assertions, however, a hearing is required unless the petition, files and record conclusively demonstrate that the petitioner was competent to plead guilty.").

In addition to Salazar's own statement that he specifically instructed his defense counsel to file the appeal, defense counsel's notes show that Salazar was seriously considering having a notice of appeal filed as he brought up the topic of whether to appeal and sought guidance as to

what consequences might flow from an appeal multiple times to defense counsel and her office staff. Salazar also points to his belief, as supported by defense counsel's comments at the close of the sentencing hearing, that significant grounds existed to appeal the application of the two-level enhancement added to his sentence.

Whether Salazar has alleged enough to merit an evidentiary hearing, which places significant burdens and expense on those involved, is a close call, particularly when his evidence is compared to the corroborating evidence on which defense counsel relies. But on balance, I conclude that an evidentiary hearing is necessary so that I can judge the credibility of Salazar's assertions. *See, e.g., Sandoval-Lopez*, 409 F.3d at 1198 ("We are compelled to conclude that the district court needs to hold an evidentiary hearing to determine whether Sandoval-Lopez really did tell his lawyer to appeal and his lawyer refused though Sandoval-Lopez demanded it.").

## CONCLUSION

I will hold an evidentiary hearing to determine the credibility of Salazar's assertions. I intend to conduct the evidentiary hearing by Zoom, in order to minimize the expense and burden on Petitioner and the government. Within ten days of the date of this Order, the government and Petitioner shall file a notice whether they consent to proceeding with the evidentiary hearing by Zoom. Assuming consent is provided, petitioner's counsel and the government shall identify the Bureau of Prisons contact for FCI Big Springs who would be able to facilitate Salazar's Zoom appearance and either propose a date for the evidentiary hearing to the court or seek a status conference to discuss how and when the hearing will proceed.

**IT IS SO ORDERED.**

Dated: September 27, 2021

William H. Orrick
United States District Judge